Ex Parte Lloyd Line.

No. 6714.  Decided November 30, 1921.

**Habeas Corpus—Bail—Rule Stated.**

Where, upon appeal of denial of bail in a capital case, the record showed that the proof was not so evident that it led one to believe that upon trial defendant would be convicted and receive the death penalty, the judgment must be reversed, the cause remanded, and bail is fixed at $5,000. .

Appeal from the District Court of Eastland.  Tried below before the Honorable E. A. Hill.

Appeal from a *habeas corpus* proceeding denying bail in a capital case.

*Burkett, Anderson & Orr,* for appellant.—Cited: Ex Parte Russell, 160 S. W., 75; Ex Parte Lewellyn, 229 id., 327; Ex Parte Young, 222 id., 242.

*R. G. Storey,* Assistant Attorney General, for the State,—Cited Ex Parte Harris, recently decided.

LATTIMORE, JUDGE.—This is an appeal from an order of the 88th District Court of Eastland County denying bail to the appellant. From the record it appears that he had been committed to custody following an examining trial before a justice of the peace on a charge of murder, and that he sued out his writ of *habeas corpus* in the District Court seeking bail, which upon hearing was refused.

The testimony of four witnesses appears in the record. None of them saw the homicide. One of said witnesses was an officer who testified that on the night of November 11, 1921, one Stella Winks drove up to where he was, in a car in which was the dead body of Joe Freibrich. Later, but how much later does not appear, the officer found appellant and one Barney Barnes in a car together and arrested them and brought them to the office of the justice of the peace.

Judge McFatter, the justice of the peace who held the examining trial, swore that he examined the body of Freibrich and found on same a watch, a pocket-knife, a couple of rings and a pocketbook and some money amounting to about $28. The hook or eye of the swivel of the watch was pulled out, and he found no watch chain. Deceased was shot near the left nipple, the ball going through the body.

Bill Farrell swore that he was the son of Rosa Farrell, and that on the night in question he saw appellant and one Johnnie Boyd at his mother's house, and that Stella Winks and deceased were also there. That the latter couple left the house, and that about five minutes after they had gone appellant and Boyd also left, and that within five or ten minutes after appellant and Boyd left he heard a shot. Later appellant came back to the house and stayed a while and left again. Witness heard nothing said by appellant while at his home.

Rosa Farrell testified but her statements are somewhat incoherent. She said that on the 11th of November appellant and Johnnie Boyd came to her house in the afternoon and stayed some time and went away, but later came back and remained until about 7 o'clock. She said that on these occasions appellant was talking to her about hi-jacking somebody. She also testified that Stella Winks and deceased were at her home that night and left, and that some time after they went away appellant came in and wanted to borrow her gun and said something about wanting to drive those s-s of b-s away from there. She

refused to let him have the gun and he went away. A short time after appellant and Boyd went away and while witness was reading she heard a shot. Still later appellant came back and wanted her to give him a drink of liquor, saying that he wanted to steady his nerves until he got to town. This appears to be about the substance of the testimony as we gather it from the record before us.

We are unable to conclude from this evidence that the State has made out a case in which, by proof evident we are led to believe that upon trial appellant would be convicted and receive the death penalty. There appears nothing to show any animus or ill-will on the part of appellant toward deceased. Stella Winks did not testify, nor did any other person give evidence as to the facts and circumstances immediately surrounding the shooting. Appellant is not shown to have been in possession of a pistol prior to the shooting, nor to have been any nearer the scene of the shooting than the home of Rosa Farrell. If the purpose of the killing was robbery, none of the property of Freibrich was found in the possession of, or traced to appellant. The evidence seems to point to Johnnie Boyd with about as much certainty as to appellant. We are of opinion that the testimony must not only make out a case sufficiently to make us believe that this accused would receive the death penalty upon trial, but such testimony must not be in such condition of conflict and doubt as to leave uncertain the guilt of the party seeking bail.

The judgment of the trial court will be reversed and bail granted in the sum of five thousand dollars.

*Bail granted.*